No. 24-11279-JJ
**Consolidated with**
No. 24-11464-J

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

———————————

HYUNDAI MOTOR AMERICA CORPORATION,
*Plaintiff-Appellant,*
v.
EFN WEST PALM MOTOR SALES, LLC, *et al.*,
*Defendants-Appellees.*

———————————

On Appeal from the United States District Court
for the Southern District of Florida
Case No. 9:20-cv-82102-WM, Hon. William Matthewman

———————————

**APPELLANT'S OPENING BRIEF**

———————————

Mitchell E. Widom (Lead Counsel)
Raquel Fernandez
Shalia Sakona
**BILZIN SUMBERG BAENA
PRICE & AXELROD LLP**
1450 Brickell Avenue, 23rd Floor
Miami, Florida 33131-3456
(305) 375-6127
mwidom@bilzin.com
rfernandez@bilzin.com
ssakona@bilzin.com
etrujillo@bilzin.com
eservice@bilzin.com

Counsel for Appellant, Hyundai Motor
America Corporation

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rules 26.1-1 to 26.1-3, Appellant Hyundai Motor America Corporation hereby certifies that the following trial judges, attorneys, persons, association of persons, firms, partnerships, or corporations have an interest in the outcome of this appeal:

1.  Acheson, Mallory M.;

2.  Anderson, Taniel E.;

3.  ARENT FOX SCHIFF;

4.  Bader, Nicholas A.;

5.  Bannon, Dave Lee, U.S. Magistrate Judge;

6.  Bartolomucci, H. Christopher

7.  BASS SOX MERCER;

8.  Bertron, Jr., James Andrew;

9.  BILZIN SUMBERG BAENA PRICE & AXELROD;

10. Bissell, W. Kirby;

11. BOWMAN & BROOKE, LLP;

12. Boyd, Ginger B.;

13. Edward F. Napleton Descendants Trust u/a/d 12/27/02;

14.     Edward F. Napleton Revocable Self-Declaration of Trust u/a/d 10/1/92;

15.     EFN West Palm Motor Sales, LLC d/b/a Napleton's West Palm Beach Hyundai;

16.     Farkas, Brian;

17.     Fernandez, Raquel;

18.     Gallaer, Charles A.;

19.     Genovese, Christopher C.;

20.     Gordon, Aaron S.;

21.     GRAYROBINSON, P.A.;

22.     Hanzman, Michael;

23.     Hawkes, Jeremiah Mahlon;

24.     Hutto, Samuel Keith;

25.     Hyundai Motor America Corporation;

26.     Hyundai Motor Company (OTC: HYMTF);

27.     Katherine R. Napleton Descendants Trust u/a/d 12/27/02;

28.     Katherine R. Napleton Revocable Self-Declaration of Trust u/a/d 10/1/92;

29.     Khaytin, Gene;

30.     Knicely, Jonathan M.;

31.     Koenig, Christopher;

32.     Malloy, Kevin Joseph;

33.     Matthewman, William, U.S.  Magistrate Judge;

34.     McMahan, Michael P.;

35.     McRory, Russell P.;

36.     Middlebrooks, Donald M., U.S. District Judge;

37.     Minier, Robb;

38.     Munoz, Jose;

39.     Napleton Investment Partnership, LP;

40.     Napleton Management Company, LLC;

41.     Napleton, Brian;

42.     Napleton, Colleen;

43.     Napleton, Edward F.;

44.     Napleton, Edward W.;

45.     Napleton, Katherine E.;

46.     Napleton, Katherine R.;

47.     Napleton, Kristen;

48.     Napleton, Paul R.;

49.   NELSON MULLINS BROAD AND CASSEL, LLP;

50.   NELSON MULLINS BROAD AND CASSEL- TALLAHASSEE;

51.   NELSON MULLINS RILEY & SCARBOROUGH, LLP;

52.   Norman, Todd K.;

53.   North American Automotive Services, Inc.;

54.   Pankow, Morgan;

55.   Pelayo, Geovanny;

56.   Potter, Shayshari;

57.   Revuelta, Ernie;

58.   Roes, Richard;

59.   Rudock, Robert J.;

60.   Ruiz, Jorge;

61.   Sakona, Shalia;

62.   SCHAERR JAFFE LLP;

63.   Sexton, Daisy;

64.   Smith, Joel H.;

65.   Sox, Jr., Richard N.;

66.   Stracher, Leslie;

67.   Widom, Mitchell Edward;

68.     White, John G. III; and

69.     Zimmerman, Jason A.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Appellant Hyundai Motor America Corporation states that its parent corporation is Hyundai Motor Company (OTC: HYMTF), which owns 100% of its stock.

Respectfully submitted,

By: */s/ Mitchell E. Widom*
Mitchell E. Widom

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument, which it believes will assist the Court's resolution of this appeal. This appeal presents several substantial legal and factual issues arising from a trial record. Because the district court misstated and overlooked items in the record, oral argument may benefit the Court by clarifying those items, including Appellant's written and oral objections to the critical jury instruction at issue in this appeal and the evidence presented at trial.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ...................................................C-1

CORPORATE DISCLOSURE STATEMENT ...................................................C-5

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF AUTHORITIES ................................. **Error! Bookmark not defined.**

JURISDICTIONAL STATEMENT ......................................................................1

STATEMENT OF THE ISSUES........................................................................2

STATEMENT OF THE CASE............................................................................4

    A.    HMA's Claims .................................................................... 4

    B.    Evidence Presented at Trial................................................ 6

        1.    Fraud Evidence .........................................................6

        2.    Evidence as to Profitability of the Recall Work to Appellees.................................................................9

        3.    Swanson "Expert" Testimony....................................11

        4.    Undisclosed Witnesses Allowed to Testify .............11

        5.    Hearsay Admitted in the Form of Recorded Customer Calls.........................................................................12

    C.    The "Unclean Hands" Jury Instruction ............................. 13

1.  Updated Written Objections to Proposed Jury Instructions Requested by District Court......................................13

2.  HMA's Final Written Objections to the Unclean Hands Instruction filed Per the District Court's Directions.................14

3.  The Charge Conference ...........................................................16

    i.   HMA's Oral Objections to the Unclean Hands Instruction, Consistent with HMA's Written Objections. ....................................................16

    ii.  The District Court's Decision to Instruct Jury on Unclean Hands Defense over HMA's objections...........18

4.  Correction of Typographical Errors..........................................19

D.  The Jury's Verdict ................................................................. 19

E.  Post-Trial Motions................................................................ 20

F.  Order on Post-Trial Motions ................................................. 21

G.  Standard of Review .............................................................. 22

SUMMARY OF THE ARGUMENT .....................................................23

ARGUMENT ....................................................................................26

I.   The District Court's Error in Instructing the Jury, Over HMA's Objections, on the "Unclean Hands" Defense Requires a New

Trial on Damages as to Khaytin and Revuelta with Respect to HMA's Fraud Claim................................................................26

    A.     HMA's Objections to the Unclean Hands Jury Instruction Were Both Timely and Sufficiently Stated.........26

    B.     HMA Also Preserved its Rule 50(b) Argument that the Unclean Hands Defense Should not go to the Jury...............31

    C.     HMA's Approval of *the Form* of the Unclean Hands Instruction Ordered by the District Court after it Overruled HMA's Objections Did not Waive or Invite Error.......................................................................................32

    D.     The Unclean Hands Defense Should not Have Been Submitted to the Jury Because it Is Inapplicable to Legal Claims Seeking Money Damages.........................................34

    E.     The Error in Submitting the Unclean Hands Defense to the Jury was Unquestionably Prejudicial ..............................39

II.    A New Trial on Damages as to Khaytin and Revuelta with Respect to HMA's Fraud Claim is Also Necessary Because the Verdict on "Unclean Hands" is Against the Great Weight of the Evidence.........40

    A.     No Evidence Established the Required "Direct Relationship" between Appellees' Intentional Fraud and

any "Unconscionable or Reprehensible" Conduct by

HMA ......................................................................................40

    B.    There was no Evidence that Khaytin or Revuelta were

*Personally* Injured by the so-called "Botched Recall" .........44

III.    The District Court's Multiple Errors in Admission of Evidence

Require a New Trial as to All Appellees ...........................................46

    A.    The Erroneous Admission of the NHTSA Consent Order

and Related Swanson Testimony Affected HMA's

Substantial Rights. ..................................................................46

    B.    The District Court Abused its Discretion in Allowing

Undisclosed Witnesses to Testify .........................................52

    C.    The District Court Abused its Discretion in Admitting

Hearsay Recordings of Customer Calls to WPM. .................55

CONCLUSION ..........................................................................................57

CERTIFICATE OF COMPLIANCE .......................................................58

CERTIFICATE OF SERVICE ................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*AcryliCon USA, LLC v. Silikal GmbH,*

    985 F.3d 1350 (11th Cir. 2021) ...........................................................38

*Adana Investing, Inc. v. Wells Fargo Bank, N.A.,*

    2017 WL 3668553 (S.D. Fla. Apr. 10, 2017)......................................36

*BAC Financial Services, Inc. v. Multinational Life Ins. Co.,*

    2014 WL 11531793 (S.D. Fla. Oct. 10, 2014) ....................................46

*Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team, LLC,*

    2021 WL 2476488 (S.D. Fla. June 17, 2021).......................................45

*Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.,*

    238 F.R.D. 679 (S.D. Fla. 2006)..........................................................37

*Bowe v. Public Storage,*

    2015 WL 11233137 (S.D. Fla. June 26, 2015)....................................41

*Bratt v. Genovese,*

    782 F. App'x 959 (11th Cir. 2019) ..............................................23, 50

*Calloway v. Partners National Health Plans,*

    986 F.2d 446 (11th Cir. 1993) .............................................................41

*Cardinal Point, LLC v. Edgewood Partners Ins. Center, Inc.,*

    2024 WL 1632740 (S.D. Fla. Apr. 16, 2024).....................................35

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,

    2008 WL 9358563 (N.D. Ga. Apr. 23, 2008)....................................47

*Carrizosa v. Chiquita Brands Int'l, Inc.*,

    47 F.4th 1278 (11th Cir. 2022) ...........................................56

*Cherry v. Dometic Corp.*,

    986 F.3d 1296 (11th Cir. 2021) ..........................................33

*CM. Fisher v. Indiana Lumbermens Mutal Ins. Co.*,

    456 F.2d 1396 (5th Cir. 1972) ...........................................27

*De Gracas v. Running Billboard Corp.*,

    2006 WL 8432507 (S.D. Fla. Apr. 12, 2006)....................................35

*Duty Free World, Inc. v. Miami Perfume Junction, Inc.*,

    253 So. 3d 689 (Fla. 3d DCA 2018)....................................38

*Elzubier v. Sony Music Holdings, Inc.*,

    564 F. App'x 545 (11th Cir. 2014)....................................33

*Ewing v. Carnival Corp.*,

    2022 WL 1719315 (S.D. Fla. May 27, 2022)...............................53, 54

*F.T.C. v. Nat'l Urological Grp., Inc.*,

    645 F. Supp. 2d 1167 (N.D. Ga. 2008), *aff'd*, 356 F. App'x 358 (11th Cir.

    2009) ....................................................................54

*Farley v. Nationwide Mut. Ins. Co.*,

    197 F.3d 1322 (11th Cir. 1999) ...........................................................................27

*FTF Lending, LLC v. Sw. Devs., Inc.*,

    2020 WL 13349085 (M.D. Fla. Apr. 1, 2020)...................................................35

*G.M. Brod & Co., v. U.S. Home Corp.*,

    759 F.2d 1526 (11th Cir. 1985) ...........................................................................39

*Gastaldi v. Sunvest Resort Communities, LC*,

    2010 WL 457243 (S.D. Fla. Feb. 3, 2010) ...................................................36, 41

*Georgetown Manor, Inc. v. Ethan Allen, Inc.*,

    991 F.2d 1533 (11th Cir. 1993) ...........................................................................27

*Gregg v US Indus., Inc.*,

    887 F.2d 1462 (11th Cir. 1989) ...........................................................................28

*Gribben v. United Parcel Service, Inc.*,

    528 F.3d 1166 (9th Cir. 2008) .............................................................................50

*Incarcerated Ent., LLC v. Cox*,

    2019 WL 4738144 (S.D. Fla. Sept. 27, 2019)...................................................35

*Industrial Dev. Bd of Town of Section, Ala. v. Fuqua Indus. Inc.*,

    523 F.2d 1226 (5th Cir. 1975) .............................................................................29

*Island Roofing & Restoration LLC v. Empire Indem. Ins. Co.*,

    2022 WL 4305922 (M.D. Fla. Sept. 19, 2022)...................................................35

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*,

    46 F.3d 258 (3d Cir. 1995) ...............................................................39

*Johnson v. Conway*,

    688 Fed. App'x. 700 (11th Cir, 2017) ...............................................27

*Jones v. Triple Z, Inc.*,

    679 F. App'x 986 (11th Cir. 2017) ....................................................34

*Knight through Kerr v. Miami-Dade Cnty.*,

    856 F.3d 795 (11th Cir. 2017) ..........................................................52

*Kramas v. Security Gas & Oil Inc.*,

    672 F.2d 766 (9th Cir. 1982) ............................................................47

*Kroger Co. v. Roadrunner Transp. Inc.*,

    634 F.2d 228 (5th Cir. 1981) ............................................................29

*Landsman Packing Co, Inc. v. Continental Can Co., Inc.*,

    864 F.2d 721 (11th Cir. 1989) ....................................................30, 33

*Lindvall v. Richmond*,

    2015 WL 12791483 (S.D. Fla. June 24, 2015)..................................46

*Loughlin v. Amerisave Mortg. Corp.*,

    2019 WL 8375920 (N.D. Ga. Nov. 12, 2019) ...................................47

*Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*,

    812 Fed. App'x 803 (11th Cir. 2020) .....................................22, 23, 52

*May v. Nygard Holdings Ltd.*,

    2007 WL 2120269 (M.D. Fla. July 20, 2007) ....................................................36

*McGinnis v. Am. Home Mortg. Servicing, Inc.*,

    817 F.3d 1241 (11th Cir. 2016) ...........................................................................31

*Microsoft Corp. v. Motorola, Inc.*,

    795 F.3d 1024 (9th Cir. 2015) .............................................................................48

*Miljkovic v. Shafriz and Dinkin*, *P.A.,*

    791 F.3d 1291 (11th Cir. 2015) ...........................................................................44

*Mitsubishi International Corp. v. Cardinal Textiles Sales, Inc.,*

    14 F.3d 1507 (11th Cir. 1994) .............................................................................14

*Moore v. Geico*,

    758 Fed. App'x. 726 (11th Cir. 2018) ....................................................46, 50, 51

*Mosher v. Speedstar Div. of AMCA Int'l, Inc.*,

    979 F.2d 823 (11th Cir. 1992) .............................................................................39

*Nature's Prod., Inc. v. Natrol, Inc.*,

    990 F. Supp. 2d 1307 (S.D. Fla. 2013) ...............................................................35

*New Orleans & N.E.R. Co v. Hewett Oil Co.*,

    341 F.2d 406 (5th Cir. 1965) ...............................................................................30

*Newman v. Am. Home Ass. Co.*,

    2024 WL 1209801 (S. D. Fla. Mar. 20, 2024) ....................................................35

*Onita-Olojo v. Sellers*,

    2014 WL 1319304 (S.D. Fla. Mar. 31, 2014) ...................................................44

*Parker v. Scrap Metal Processors, Inc.*,

    386 F.3d 993 (11th Cir. 2004) ............................................................34

*Peat, Inc. v. Vanguard Rsch., Inc.*,

    378 F.3d 1154 (11th Cir. 2004) ..........................................................57

*Petersen v. Smith*,

    762 Fed. App'x 585 (11th Cir. 2019) ..................................................27

*PNC Bank v. Smith*,

    225 So.3d 294 (Fla. 5th DCA 2017) ...................................................42

*Price v. Trans Union, L.L.C.*,

    839 F. Supp. 2d 785 (E.D. Pa. 2012) ..................................................50

*Quinn v. Southwest Wood Products, Inc.*,

    597 F.2d 1018 (5th Cir. 1979) ............................................................32

*Regions Bank v. Old Jupiter, LLC*,

    2010 WL 5148467 (S.D. Fla. 2010) ......................................14, 17, 35

*Registe v. Linkamerica Exp., Inc.*,

    2015 WL 1288138 (M.D. Fla. Mar. 19,2015), *aff'd* 668 F. App'x 882

    (11th Cir. 2016)..................................................................................31

*Republic Bank of Chicago v. Gehrisch Ins. & Fin. Servs., Inc.*,

    2022 WL 3646067 (M.D. Fla. July 21, 2022) .....................................................35

*Ross v. Am. Red Cross*,

    567 F. App'x 296 (6th Cir. 2014) .........................................................49

*Royal Palm Properties, LLC v. Premier Est. Properties, Inc.*,

    2010 WL 3941745 (S.D. Fla. Oct. 6, 2010) .........................................35

*Sciaretta v. Lincoln National Life Insurance Co.*,

    No. 11-cv-80427-DMM (S.D. Fla. Mar. 2, 2012) ........................37, 38

*Scott v. Paychex Ins. Agency, Inc.*,

    2023 WL 5036099 (S.D. Fla. Aug. 8, 2023) ....................................35, 37

*Seitman & Associates, Inc. v. RJ Reynolds Tobacco Co.*,

    837 F.2d 1527 (11th Cir. 1988) ................................................22, 29, 39

*SMK Assoc. v. Lorali*, *Inc.*,

    2015 WL 11197776 (S.D. Fla. Jan. 21, 2015).................................17, 35

*Softball Country Club-Atlanta v. Decatur Fed. Sav. & Loan Ass'n*,

    121 F.3d 649 (11th Cir. 1997) ...............................................................31

*Splitt v. Deltona Corp.*,

    662 F.2d 1142 (5th Cir. 1981) ...............................................................32

*St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*,

    5 F.4th 1235 (11th Cir. 2021) ...............................................................23

*Teel v. Lozada*,

   99 F.4th 1273 (11th Cir. 2024) ...................................................................27, 34

*Toucan Partners, LLC v. Hernando Cnty., Fla.*,

   571 F. App'x 737 (11th Cir. 2014) ...................................................................22

*U.S. v. Hayes*,

   762 F.3d 1300 (11th Cir. 2014) ...................................................................33

*United States v. Austin*,

   54 F.3d 394 (7th Cir.1995) ...................................................................47

*United States v. Bates*,

   960 F.3d 1278 (11th Cir. 2020) ...................................................................56

*United States v. Cain*,

   587 F.2d 678 (5th Cir. 1979) ...................................................................56

*United States v. Carlisle*,

   173 F. App'x 796 (11th Cir. 2006) ...................................................................56

*United States v. Cruz*,

   765 F.2d 1020 (11th Cir. 1985) ...................................................................56

*United States v. Fuentes*,

   537 F. App'x 921 (11th Cir. 2013) ...................................................................34

*United States v. Howell*,

   425 F.3d 971 (11th Cir. 2005) ...................................................................34

*United States v. Killough*,

    848 F.2d 1523 (11th Cir. 1988) ...........................................................................39

*Warner v. Columbia/JFK Medical Center, LLP*,

    305 Fed. App'x 610 (11th Cir. 2008) ...............................................................27

*Wendl v. Int'l Real Estate News, LLC*,

    2019 WL 4254626 (S.D. Fla. July 31, 2019) ....................................................35

*Wozniak v. Coatesville Area Sch. Dist.*,

    2006 WL 5116701 (E.D. Pa. June 19, 2006)....................................................50

*Wyndham Vacation Ownership, Inc. v. Reed Hein & Associates, LLC, et al.*,

    2019 WL 13138272 (M.D. Fla. Dec. 11, 2019) ...............................................46

*Zarate v. U.S. Attorney Gen.*,

    26 F.4th 1196 (11th Cir. 2022) .........................................................................44

**STATUTES**

18 U.S.C. § 1961 .................................................................................................1, 5

28 U.S.C. § 1291 ....................................................................................................2

28 U.S.C. § 1331 ....................................................................................................1

28 U.S.C. § 1332 ....................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ................................................................................................53

Fed. R. Civ. P. 46 ................................................................................................30

Fed. R. Civ. P. 50 ..........................................................3, 20, 22, 23, 31, 32

Fed. R. Civ. P. 51 ...........................................................25, 27, 28, 30, 31

Fed. R. Civ. P. 59 ............................................ 1, 3, 20, 21, 22, 25, 38

Fed. R. Evid. 103 .......................................................................23

Fed. R. Evid. 408 ...................................................................11, 47

Fed. R. Evid. 803 .......................................................................55

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 based on Hyundai Motor American Corporation's ("HMA") claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*., and under 28 U.S.C. § 1332(a)(1) based on the parties' complete diversity and the amount in controversy. On March 26, 2024, the district court entered its Amended Final Judgment[1] disposing of all claims and counterclaims (Doc. 630).

On April 23, 2024 (Doc. 634), HMA timely noticed its appeal (Appeal No. 24-11279-JJ**)** from the Amended Final Judgment and the Order Denying HMA's Motion for New Trial Pursuant to Rule 59(a) and Denying HMA's Renewed Judgment as a Matter of Law as to Unclean Hands Defense (Doc. 615) ("Order Denying Post-Trial Motions").

On May 6, 2024 (Doc. 640), HMA timely filed its Amended Notice of Appeal (Appeal No. 24-11464-J) to reflect HMA's additional appeal of the Order Denying HMA's Motion for New Trial Pursuant to Rule 59(a) and Denying HMA's Renewed Motion for Judgment as a Matter of Law as to Unclean Hands Defense *entered on May 3, 2024* (Doc. 639).[2]

---

[1] In an earlier appeal, this Court determined that the document titled "Final Judgment" (Doc. 536) left unresolved certain counterclaims before the district court. *See* Docket No. 23-12657, Doc. 26-1.

[2] After the entry of the Amended Final Judgment, out of an abundance of caution in case its original post-trial motions were deemed premature because they were filed

On June 6, 2024, Appeal No. 24-11279-JJ and Appeal No. 24-11464-J were consolidated. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.　　Whether the district court reversibly erred in instructing the jury, over HMA's written and oral objections, on Appellees' "unclean hands" affirmative defense to HMA's fraud claims seeking solely money damages.

2.　　Whether the jury's verdict on the "unclean hands" defense is against the great weight of the evidence because there was no evidence presented at trial that the intentional warranty fraud committed by Appellees Khaytin and Revuelta was "directly related" to any unconscionable or reprehensible conduct by HMA.

3.　　Whether the jury's verdict on the "unclean hands" defense is against the great weight of the evidence (i) because there was no evidence presented at trial that Appellees Khaytin and Revuelta were "personally injured" by any such unconscionable or reprehensible conduct by HMA and (ii) because there was overwhelming evidence presented that they personally *profited* from the so-called "botched" recall.

---

before the entry of final judgment, HMA renewed its post-trial motions. (Docs. 632; 633). The district court denied the renewed post-trial motions for the same reasons as it had denied the original post-trial motions, incorporating its earlier Order Denying Post-Trial Motions. (Doc. 639 at 3). All arguments asserted herein as to the Post-Trial Motions and Order Denying Post-Trial Motions should, therefore, be construed to include the equivalent Renewed Motions and related Order.

4.     Whether the district court reversibly erred in admitting into evidence: (1) a Consent Order entered into between HMA and the National Highway Traffic Safety Administration ("NHTSA") and "expert" testimony as to the terms of the Consent Order; (2) the trial testimony of undisclosed trial witnesses; and (3) hearsay in the form of recorded customer calls.

5.     Whether based on the issues identified in (1) through (4) above the district court erred in denying HMA's Rule 59 Motion.

6.     Whether HMA's written objections and charge conference argument were sufficient to constitute a Rule 50(a) motion as to the unclean hands defense such that the district court erred in denying HMA's Rule 50(b) Motion.

## STATEMENT OF THE CASE

This is an appeal of the Amended Final Judgment (Doc. 630) and Order Denying Post-Trial Motions (Docs. 615; 639) entered by the district court after a jury trial of the parties' respective claims and counterclaims. (Doc. 532). The jury found Appellees Eugene "Gene" Khaytin ("Khaytin") and Ernesto "Ernie" Revuelta ("Revuelta") "committed fraud against Hyundai," but awarded no damages to HMA, based on Appellees' "unclean hands" affirmative defense. (Doc. 532 at 2). HMA seeks a new trial: (1) based on the district court's decision to instruct the jury, over HMA's objections, on the "unclean hands" defense; (2) because the jury's verdict on "unclean hands" is against the great weight of the evidence; and (3) based on the district court's erroneous evidentiary rulings, summarized below.

### A. HMA's Claims

HMA is the distributor of Hyundai vehicles in the United States. (Doc. 417 at 13, ¶ 2). Appellant EFN West Palm Motor Sales, LLC ("WPM") is a Hyundai dealer. (*Id.,* ¶3). Appellee Edward "Eddie" Napleton, is a director of an affiliate of WPM, who has oversight responsibility for WPM. (*Id.*, ¶7). Appellees, Khaytin, Revuelta, Geovanny Pelayo and Jorge Ruiz, are current or former employees of WPM. (*Id.,* ¶¶ 5-6, 8-9). During the relevant time, Khaytin was the general manager of WPM. (*Id.,* ¶5). Revuelta was the head of WPM's service department. (*Id*, ¶ 6)

Beginning in 2015, HMA recalled certain 2011-2012 Hyundai Sonata vehicles to address a defect in the Theta II engine that could lead to engine failure. (*Id.* at 14, ¶ 17). In June 2017, HMA expanded the recall to include certain model year 2013-2014 Hyundai Sonata and Santa Fe Sport vehicles equipped with the Theta II engine, and, in 2018 and 2019, HMA updated these recall campaigns to include certain model year 2019 vehicles. (*Id.,* ¶¶ 18, 19). Under the terms of the recall campaigns, HMA agreed to conduct inspections, through its authorized dealers, on the recalled vehicles and to replace the engines on those vehicles that experienced the recall condition. (*Id.* at 14-15, ¶ 20).

HMA's operative complaint alleged that Appellees[3] used the Theta II engine recalls to defraud HMA by submitting false warranty claims for engine replacements. (Doc. 144, ¶¶ 40-82). That complaint included the following claims: (1) Fraud (against the individual Appellees); (2) Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (c) (against all Appellees); (3) Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (d) (against all Appellees); (4) Tortious Interference with a Contract and Business

_____

[3] HMA does not challenge the district court's dismissal of its claims against Defendants Robb Minier and North America Automotive Services. (Doc. 181).

Relationship (against the individual Appellees);[4] and (5) Civil Conspiracy (against the individual Appellees). (Doc. 144).

Although HMA originally sought "equitable relief, including restitution or disgorgement" in addition to compensatory damages (Doc. 144 at ¶ 113), HMA expressly abandoned this request for relief prior to trial and sought only damages, as the district court recognized. Doc. 404 at 5, Doc. 385 at 5-7; Doc. 417 at 5, 22-44.

## B.   Evidence Presented at Trial

### 1.   Fraud Evidence

At trial, HMA presented evidence that Appellees intentionally damaged engines in order to submit false warranty claims to HMA. For example, HMA presented evidence that Khaytin bought recall-eligible vehicles at auction for the purpose of supplying them to Revuelta in the service department so that the engines could be intentionally "blown," including 22 engines blown in one month alone. *See, e.g.* 1/4/2023 Tran. (Doc. 575) (Minier) 196:21-197:3; 199:9-200:17; 1/5/2023 Tran. (Doc. 576) 28:12-30:16; 43:3-22; 1/6/2023 Tran. (Doc. 577) (Eddleman) 30:4-38:24, 44:21-25; 53:15-20; 56:6-8, 62:11-16; 71:19-73:6. This practice of "blowing" engines—intentionally running the engines without oil until they

---

[4] This claim was asserted in the alternative and was abandoned at trial. 1/10/23 Trial Transcript ("Tran") (Doc. 579) 133:14-17.

seized—was also employed on lease returns and customer vehicles. 1/6/2023 Tran. (Doc. 577) (Eddleman) 54:13-16.

HMA presented the testimony of former WPM service technician, John Diaz, who witnessed an engine being blown and heard similar "red-lining" of engines while employed at WPM. 1/5/2023 Tran. (Doc. 576) 82:12-88:14, 121:11-14.

HMA also showed various examples of inspections WPM performed on low-mileage vehicles, certifying that the vehicles had no engine issues whatsoever; yet, with little or no additional mileage, WPM suddenly reported the same engines as "seized" in warranty claims to HMA. 1/6/2023 Tran. (Doc. 577) (Smith) 140:2-147:6; 1/4/2023 Tran. (Doc. 575) 204:12-230:17. These examples were powerful circumstantial evidence of fraud because the recall condition is a progressive condition, indicated by a knocking noise, which, if left unaddressed, can *over time* result in engine seizure. 1/6/2023 Tran. (Doc. 577) 102:18-104:16.

In some cases, even if engines were not intentionally damaged, false documentation was submitted by WPM in order to misrepresent that the recall condition existed in a particular engine. The pre-authorization process to obtain approval for engine replacements sometimes required the submission to HMA of a picture of the oil pan *from the engine sought to be replaced*, to document the presence of metallic debris in the oil pan, an effect of the recall condition. 1/4/2023 Tran. (Doc. 575) (Blackburn) 131:23-132:4; 141:21-142:7; 156:12-157:2; 1/6/2023

7

Tran. (Doc. 577) (Smith) 106:21-24. The evidence at trial revealed numerous instances where photographs of the *same* oil pan were falsely submitted to justify warranty claims on unrelated vehicles. 1/6/2023 Tran. (Doc. 577) (Smith) 118:10-130:7; 132:18-138:11; 237:11-17. As service director, Revuelta personally approved each engine replacement claim. Doc 501-3, Revuelta Designations at 57:15-58:4, 161:13-24. Mr. Diaz testified that he witnessed oil pans being kept and photographed by the technicians in support of unrelated claims. 1/5/2023 Tr. (Doc. 576) (Diaz) 87:23-88:3; 109:12-20; 119:9-15.

Executives from NAAS, which oversaw WPM's operations, learned of fraudulent conduct by Khaytin and Revuelta in connection with engine replacements in March 2017. NAAS executives questioned Khaytin and Revuelta about the fact that, in six days, WPM had purportedly done $291,000 worth of engine replacements. Doc 559-9 at 1 (Pl. Ex. 2415); Doc. 501-1, Stevens Designations at 82:7-93:24. NAAS's CFO wrote concerning the incident:

> Good thing we let them have a huge March and dump all these additional ones in here before we quit. . . Better watch this—not sure what a "commitment" from [Khaytin and Revuelta] is worth.

Doc. 559-10 at 1 (Pl. Ex. 2416).

NAAS reprimanded Khaytin and Revuelta for "fraudulent" practices in connection with "replacement (re-call) engines." Docs. 559-4 (Pl. Ex. 2406); 559-5 (Pl. Ex. 2408). While Appellees argued at trial that this reprimand was merely for

"booking" the replacements too early, HMA presented extensive evidence to the contrary. 1/6/2023 Tran. (Doc. 577) (Eddleman) 45:18-24; Stevens Designations; Doc. 501-1 at 89:5-89:17 (CFO could "not recall" whether it was "pre-booking" or warranty fraud).

HMA also presented expert testimony, through James Smith, that WPM reported a higher engine seizure rate than *all other Hyundai dealers in the entire country for the entire 9 month period for which data was available*. 1/6/2023 Tran. (Doc. 577) (Smith) 154:16-155:18; 157:8-14; 1/9/2023 Tran. (Doc. 578) (Smith) 54:6-9. Significantly, January of 2019 (when texts were exchanged regarding Khaytin and Revuelta blowing engines) and March of 2017 (the month for which Khaytin and Revuelta were reprimanded for "fraudulent" practices) were peak months for WPM engine replacements. 1/6/2023 Tran. (Doc. 577) (Smith) 151:2-11.

### 2. <u>Evidence as to Profitability of the Recall Work to Appellees</u>

Khaytin was personally compensated based on WPM's profits. Doc. 501-2, Eddie Napleton Designations at 57:15-58:5; 1/5/2023 Tran. (Doc. 576) 134:13-135:6. Revuelta was personally compensated based on the service department's gross profits. Docs. 501-2, Eddie Napleton Designations, at 58:21-23; 501-3, Revuelta Designations, at 158:23-159:8.

Contemporaneous emails introduced at trial establish that Khaytin and Revuelta were ecstatic about the recalls because of the additional money they earned personally from the recall work. For example, Khaytin wrote at the time: "Many engines failing. Great news!! **$$$$."**[5] Revuelta similarly "loved" to get additional "BIG MONEY MAKER" recall work.[6] *See also* 1/9/2023 Tran. (Doc. 578) (Revuelta) 184:16-18 ("For me personally? It makes money.").

Eddie Napleton testified regarding his efforts to bring in to WPM as much of the profitable recall work as possible. Doc. 501-2 at 87:1-87:19; 88:8-90:4; 91:4-91:22. WPM testified that it sought out as much of the recall work as possible because "there are markup rates based on the parts or labor rate." 1/9/2023 Tran. (Doc. 578) 231:1-6; 231:22-232:2.

Appellees even argued in closing argument: "**Warranty work is good business**. . . . What did Eddy Napleton speak to Gene Khaytin about; . . . **get the recall test done, a good percentage of them are going to fail**. . . . **You only mine for gold where you think the gold is going to be**. . . . As Eddy Napleton confirmed, we wanted more VINS in the door. **That's, again, good business** . . ." 1/18/2023 Tran. (Doc 595) 55:23-56:21.

---

[5] Doc. 559-11 (Pl. Ex. 2426) (emphasis in original).
[6] Doc. 559-20 (Pl. Ex. 2491); Doc 559-21 (Pl. Ex. 2492).

### 3. Swanson "Expert" Testimony

Mark Swanson was called as an "expert" witness on "NHTSA, in general, the investigations it conducts and automotive safety"[7] to communicate to the jury the terms of a Consent Order entered into between HMA and NHTSA involving the recalls. Swanson had no knowledge relating to HMA's fraud claim against Appellees. 1/9/2023 Tran. (Doc. 578) 120:23-121:12.

HMA filed pre-trial motions: (1) to exclude Swanson's testimony; and (2) to exclude evidence regarding NHTSA's investigation of HMA and the Consent Order. HMA argued that this evidence was both irrelevant and unduly prejudicial, and inadmissible pursuant to Rule 408. Doc 333 at 5-8, 15; Doc 353 at 4-8. Although these motions were granted in part as to other issues, the district court ruled that (1) the Consent Order was admissible, and (2) Swanson would be allowed to testify as to NHTSA's investigation and the Consent Order. Doc 399 at 9; Doc 405 at 5-6. Thus, at trial, through Swanson, Appellees were able to admit the Consent Order and detail for the jury the severe penalties it imposed.[8]

### 4. Undisclosed Witnesses Allowed to Testify

After the close of HMA's case, Appellees disclosed for the first time certain customers of WPM whom they sought to present as so-called "rebuttal" or

---

[7] 1/9/2023 Tran. (Doc. 578) 93:14-15.
[8] *Id.* 110:12-116:17.

"impeachment" witnesses. Doc. 502. HMA objected, pointing out that these witnesses (who ultimately testified that their cars, which were the subject of disputed warranty claims, died while driving) were not actually rebuttal or impeachment witnesses, and Appellees were required to have disclosed them in accordance with pre-trial disclosure requirements. 1/10/2023 Tran. (Doc. 579) 10:7-14:1. The district court nevertheless allowed three undisclosed witnesses to testify for the purposes of "impeachment of Mr. Blackburn and Mr. Smith about the motive of how the vehicle dies or how the engine dies." *Id.* 259:3-6.

5. <u>**Hearsay Admitted in the Form of Recorded Customer Calls**</u>

Over HMA's objections,[9] Appellees were also allowed to play for the jury three recorded calls from customers concerning their vehicles dying and being towed to WPM.[10] These customers were not listed as witnesses, nor did they testify at trial. Appellees argued that the calls were admissible as either present sense impressions or excited utterances. (Doc. 518). Appellees failed to meet their burden of establishing the foundational requirements for either hearsay exception.

---

[9] 1/10/2023 Tran. (Doc. 579) 97:4-100:20; 137:18-138:7; Doc. 510; Doc. 519.
[10] 1/12/2023 Tran. (Doc. 581) 136:23-138:19.

C.   **The "Unclean Hands" Jury Instruction**

1.   **Updated Written Objections to Proposed Jury Instructions Requested by District Court**

Four days prior to the charge conference, the district court directed: "after you confer more over the weekend . . . file another set of proposed joint jury instructions which eliminate as many disputes as possible, and clearly **show me what the disputes are**." 1/13/2023 Tran. (Doc. 582) 213:24-214:2.

Referencing the unclean hands jury instruction in particular, the district court said: "I think **the issue is one side doesn't want the unclean hands instruction**, but if it is allowed, the language might be agreed to.  Is that the case?" (*Id.* 208:7-9). Upon being informed by counsel for HMA that there was no agreement as to the language of the instruction either,[11] the following exchange occurred between the district court and counsel for Appellees:

> *THE COURT:* Confer with opposing counsel, **and by Monday at noon I am going to want where you dispute after you have conferred further the unclean hands**.

> [*Defense Counsel*]: . . .  Instruction 20 [unclean hands] was previously agreed to, the Court has it correct, **it is just now it is no longer agreed to**.

> *THE COURT:* **Whatever.  That is why we will have a charge conference,** but I want the parties to try to agree on it.  If you can't, I will make the decision.

*Id.* 208:13-21.

---

[11] *Id.* 208:10-12

## 2. HMA's Final Written Objections to the Unclean Hands Instruction filed Per the District Court's Directions

As directed, HMA conferred further with Appellees and filed the parties' final proposed jury instructions, stating the parties' positions as to each proposed instruction. (Doc. 528). HMA clearly objected to giving *any* unclean hands instruction to the jury, stating: "Plaintiff objects to instructing the jury on this defense for multiple reasons." (*Id.* at 39).

HMA's written objections were based, in part, on the argument that "unclean hands" is inapplicable as a defense to legal claims:

> *Moreover, there is a wealth of case law to the effect that unclean hands is not a defense to legal claims. See, e.g., Regions Bank v. Old Jupiter, LLC, 2010 WL 5148467, * 6 (S.D. Fla. 2010) ("Because the doctrine of 'unclean hands' is inapplicable to . . . a legal claim . . . the Bank's motion for summary judgment on the legal sufficiency of the unclean hands defense shall be granted." In Regions, the Court explained:*
>
>> *"The unclean hands doctrine traditionally applies only to claims for equitable relief or in opposition to equitable defenses. [ ]. **Where, as here, a plaintiff seeks to recover only damages, the unclean hands doctrine is not applicable**." [ ].*
>
> *Certainly both Plaintiff's tort claims and civil RICO claims are "legal claims." Mitsubishi International Corp. v. Cardinal Textiles Sales, Inc., 14 F.3d 1507, n. 18 (11th Cir. 1994) . . .*

> *Here, of course, Plaint[i]ff is seeking solely money damages and thus the unclean hands defense does not apply to any of its claims. Plaintiff has repeatedly clarified through its interrogatory answers, its pre-trial filings, and its presentation of evidence at trial, and the verdict form that will be provided to the jury that it is not seeking "disgorgement" or any other equitable relief as originally pled. This Court has noted that Plaintiff "is not pursu[i]ng the equitable remed[y] of disgorgement." DE. 404 at 5.*

(Doc. 528 at 39-40) (italics in original, denoting HMA's objections). HMA also objected to instructing the jury on "unclean hands" based on authorities decided specifically in the context of RICO claims. (*Id.* at 39).

HMA further objected to submitting the unclean defense to the jury based on the insufficiency of the evidence presented at trial: "*Plaintiff does not believe any evidence has been presented that would support either element of such a defense.*" (*Id.* at 40).

Finally, HMA proposed alternate language, enumerating the elements of the defense, to be employed in the event that the district court instructed the jury on unclean hands over HMA's objections. (*Id.* at 40).

### 3.     The Charge Conference

#### i.     HMA's Oral Objections to the Unclean Hands Instruction, Consistent with HMA's Written Objections.

At the charge conference, even before the district court reached the unclean hands instructions, HMA's counsel stated, "I want to be heard on whether the unclean hands can go to the jury." 1/17/2023 Tran. (Doc. 596) 97:24-25.

The district court made clear that it understood HMA's written objections to that instruction:

> THE COURT: **The way I understand it, Plaintiffs' position is that no unclean hands affirmative defense instruction should be given,** but if it is given, you want the one on [ ] page 39 of Docket Entry 528. . . .
>
> MS. FERNANDEZ: Yes, and if I can address for you, [ ] more specifically **why I don't think it should be given**.

Id. 114:25-115:8. HMA orally argued the same objections it had filed in writing. Id. 115:11-117:14; Doc. 528 at 39-40.

Specifically, as to the unclean hands defense being inapplicable to legal claims, counsel for HMA stated HMA's objection as follows:

> More broadly than that, Your Honor, **all of our claims are legal claims and there are many decisions that point out that the unclean hands defense is not a defense to legal claims**. Here, we are only seeking monetary damages, no equitable relief. Originally, in our complaint, we did have a discouragement [disgorgement] request for relief. That has been long ago abandoned as you recognized in one of your pretrial orders. So we are seeking strictly legal relief in terms of money damages,

16

and so for instance the *Regions Bank* case we cite at 2010 West Law 51048467 says that **the doctrine is inapplicable to a legal claim.** And I have another case, 2015 West Law, [1]1197776, that's *SMK Associates versus Lorali*, and in that case, Judge Williams declined to -- she said **the Court did not allow SMK's jury instructions on unclean hands because this is not a recognized defense to a claim for damages**, . . . The Court determined that **the Doctrine of Unclean Hands is applicable only to a claim for equitable relief, not a claim for damages. So we have no claims for equitable relief in this case, so, under this authority, I would say, legally, it is improper**.

*Id.* 115:21-116:17.

As to the insufficiency of the evidence to support the unclean hands defense,

counsel for HMA stated HMA's objection as follows:

> As a factual matter, the defense of unclean hands has to be -- the reprehensible conduct has to be **directly related** to our claims. In this case, obviously, our claims are for warranty fraud. It is obvious to me, **there has been no evidence that we did anything in connection with the claims**, the [prior] authorization requests submitted to us that would be reprehensible conduct. It has to be related directly to the claim and, also, they have to establish that **each Defendant was personally injured by that conduct. There has been absolutely no evidence to show that anything we have done relates to their submission of warranty claims to us or that any Defendant was injured by any conduct.**
>
> **So, as a factual matter, we don't think there is evidence in the record to support the jury instruction**.

*Id.* 116:17-117:5. At the conclusion of HMA's counsel's argument, the district court

judge stated: "**I understand your position**." *Id.* 117:15.

ii. **The District Court's Decision to Instruct Jury on Unclean Hands Defense over HMA's objections.**

After hearing briefly from counsel for Appellees, the district court ruled as follows:

> *THE COURT:* All right. **I am going to give an unclean hands jury instruction**, however, I think it needs to be modified. **I do find that it's appropriate to give an unclean hands jury instruction.**
>
> What I am going to do is if you take a look, I am going to marry these two.

*Id.* 118:3- 118:8.

Thereafter, "in light of [the district court's] ruling"[12] that it would give an unclean hands instruction, a further exchange occurred regarding the wording of the unclean hands instructions based on HMA's concern that the jury would consider HMA's spoliation of evidence (already addressed through the district court's limitation on damages and a nonrebuttable presumption) when weighing the unclean hands defense. *Id.* 179:3-182:2. The district court instructed the parties to try to agree on language describing the factual bases for unclean hands. *Id.* 181:21-182:2. When the parties could not reach agreement, the district court ruled that the following language should be added: "Defendants specifically allege that Hyundai

---

[12] *Id.* 179:3-4.

acted with unclean hands by conducting a botched recall of the Theta II engine that included a flawed test." *Id.* 205:5-11; Doc. 530 at 33.

At the conclusion of the charge conference, the district court asked that a "clean" copy of the court's jury instructions based on its rulings be circulated and directed that "[e]verybody go through the verdict form and the jury instructions tonight and make sure there are no typos." *Id.* 212:12-21.

### 4.    Correction of Typographical Errors

The next day, the district court addressed certain issues that he "saw" in "the Court's final jury instructions" sent to his chambers the evening before (1/18/2023 Tran. (Doc. 595) 9:15-21). Counsel for HMA represented that the parties were in agreement as to how to address those issues, including fixing a pagination error and an error in the language of the unclean hands instruction so that the language of first paragraph matched the language of the second paragraph as the district court had ruled the day before.[13] *Id.* 9:22-10:1. The district court asked both sides if there were any other issues as to the Court's final jury instructions, and both sides indicated that there were none. *Id.* 10:15-25.

### D.    The Jury's Verdict

The jury found Khaytin and Revuelta "committed fraud against Hyundai," but awarded no damages to HMA based on Appellees' unclean hands affirmative

---

[13] 1/17/2023 Tran. (Doc. 596) 119:25-120:5.

defense. (Doc. 532 at 2). As to the remaining Appellees, and Khaytin and Revuelta on all other counts, the jury found that HMA had not proven its claims. (*Id.* at 2-7). As to each of WPM's counterclaims, the jury found in favor of HMA, and against WPM. (*Id.* at 8-11).

**E.**     **Post-Trial Motions**

HMA's Rule 59 Motion argued that HMA was entitled to a new trial based on the district court's error in instructing the jury, over HMA's objections, on the unclean hands defense, an equitable defense that was inapplicable to HMA's legal claims, which sought only money damages. (Doc. 587 at 2-6). HMA further argued that it was entitled to a new trial because the verdict as to unclean hands was against the great weight of the evidence, as no evidence had been presented at trial to meet the elements of the unclean hands defense. *Id.* at 7-13. Finally, HMA argued that a new trial was required based on the district court's errors in admitting: (1) the Consent Order and Swanson's related testimony; (2) testimony from undisclosed witnesses; and (3) recorded customer calls. *Id.* at 14-21.

HMA relied upon its unambiguous argument at the charge conference concerning unclean hands to bring a Rule 50(b) motion on the same grounds (Doc. 588 at 1-2). HMA argued that it was entitled to judgment as a matter of law because (1) unclean hands is an equitable defense inapplicable to HMA's legal claims for

money damages (*Id.* at 5-8); and (2) there was insufficient evidence presented at trial as to the required elements of the defense.  *Id.* at 8-17.

**F.**     **Order on Post-Trial Motions**

In denying HMA's Rule 59 Motion, the district court relied on the doctrine of "invited error." (Doc. 615 at 19-21).  The district court stressed that HMA had not filed any motions with respect to the unclean hands defense prior to trial, and that originally the unclean hands jury instruction was agreed.  *Id.* at 19-20.  The district court also stated that the "very first objection posed on January 11, 2023 was incomplete, general and vague[,]" and "[w]hile HMA's counsel did make a slightly more substantive verbal objection to the unclean hands jury instruction at the charge conference, the argument was brief and cited little law." *Id.* at 20.

Nowhere in the Order on Post-Trial Motions, did the district court address the written objections to the unclean hands affirmative defense that HMA filed at the district court's direction on January 16, 2023 (Doc. 528 at 39-40).  The district court instead pointed to the fact that, *after* it had ruled to allow an unclean hands defense over HMA's objections, counsel for HMA had "collaborated" with counsel for Appellees on the language of the instruction and "agreed to the specific language of the instruction read to the jury." (Doc. 615 at 20-21).

The district court went on to hold that unclean hands also applies to legal claims for money damages, not just equitable claims.  *Id.* at 21-23.  Even if the

unclean hands instruction was improper, the district court determined it was "harmless error." *Id.* at 27. The district court also determined the weight of the evidence at trial supported the unclean hands defense. *Id.* Finally, the district court determined that a new trial was not warranted by any of its evidentiary rulings. *Id.* at 29-37.

The district court held that HMA failed to preserve its Rule 50(b) argument through its arguments at the charge conference, which the court characterized as "neither clear nor unambiguous." *Id.* at 12.

## G. <u>Standard of Review</u>

The unclean hands jury instruction is subject to *de novo* review, "to determine whether [it] misstate[s] the law or mislead[s] the jury to the prejudice of [HMA]." *Toucan Partners, LLC v. Hernando Cnty., Fla.*, 571 F. App'x 737, 741 (11th Cir. 2014). "Where, as here, a trial court has submitted to the jury an issue not proper for its consideration[,] a new trial is usually ordered." *Seitman & Associates, Inc. v. RJ Reynolds Tobacco Co.,* 837 F.2d 1527, 1530 (11th Cir. 1988).

The district court's denial of HMA's Rule 59 Motion is reviewed for an abuse of discretion. *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, 812 Fed. App'x 803, 808 (11th Cir. 2020). HMA is entitled to a new trial on evidentiary grounds to the extent this Court finds that the jury's verdict is against the great weight of the evidence. *Id.*

The trial court's admission of disputed evidence over HMA's objections is reviewed for an abuse of discretion. *Id.* at 809. Reversal is warranted if HMA's substantial rights were affected; *i.e.*, if the error probably had a substantial prejudicial influence on the jury's verdict. Fed. R. Ev. 103; *Bratt v. Genovese*, 782 F. App'x 959, 966 (11th Cir. 2019).

The trial court's denial of HMA's Rule 50 Motion is reviewed *de novo*, viewing the evidence in the light most favorable to Appellees. *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 5 F.4th 1235, 1242 (11th Cir. 2021). HMA is entitled to reversal based on Appellees' failure to present a legally sufficient evidentiary basis for a reasonable jury to find that HMA had unclean hands. *See Id.*

## SUMMARY OF THE ARGUMENT

After eleven days of trial, the jury determined that both Khaytin and Revuelta "committed fraud against Hyundai." The jury did not reach the issue of damages, however, *solely* due to the unclean hands defense, Appellees' *only* affirmative defense. Thus, the prejudice to HMA from the district court's error in submitting the unclean hands defense to the jury is self-evident.

HMA clearly preserved its objections to the submission of the unclean hands defense to the jury. As the district court directed upon being informed of the disputed instruction, HMA filed detailed written objections to the unclean hands

instruction in advance of the charge conference,[14] raising precisely the same arguments it raised in its post-trial motions and precisely the same arguments it now raises on appeal. And, at the charge conference, HMA orally reiterated, at length, these same objections.[15]

The district court understood and acknowledged HMA's objections to giving any unclean hands instruction. Referencing HMA's written objections by docket entry and page number, the district court stated at the charge conference: "The way I understand it, Plaintiff's position is that no unclean hands instruction should be given . . ."[16] And, when HMA's counsel finished arguing HMA's objections at the charge conference, the district court stated, again, "I understand your position."[17]

Unfortunately, the district court chose to overrule HMA's objections. Citing to the single legal authority argued by Appellees in support of their unclean hands defense[18]—not an opinion, but merely a set of instructions given in another trial— the district court ruled: "**I do find that it's appropriate to give an unclean hands jury instruction**,"[19] Under these circumstances, this Court's precedent, and the

---

[14] Doc 528 at 39-40.
[15] 1/17/2023 Tran. (Doc. 596) 115:21-117:5.
[16] *Id.* 114:25-115:5.
[17] *Id.* 117:15.
[18] *Id.* 119:6-9.
[19] *Id.* 118:5-6.

language of Rule 51 itself, foreclose the district court's reliance on "invited error" or waiver in denying HMA's Rule 59 Motion.

Each of the arguments relied upon below to defend the submission of the equitable defense to the jury is equally without merit. There is a wealth of authority from within this Circuit—literally pages of decisions—making clear that the equitable defense of unclean hands does not apply, as a matter of law, to a legal claim such as HMA's fraud claim seeking only money damages.

Further, there was no evidence at trial presented to support the required elements of such a defense, even if it were legally applicable. Specifically, there was no evidence that Khaytin's and Revuelta's *intentional warranty fraud* had anything to do with any recall deficiencies, much less was there any evidence of a "direct relationship" between their fraud and any unconscionable or reprehensible conduct by HMA. And, rather than suffering any personal loss from the recall, Khaytin and Revuelta reaped huge financial benefits. To use their contemporaneous words, they "loved" that "BIG MONEY" recall work, which brought them "$$$$!"[20]

Finally, the district court's evidentiary rulings require a new trial as to all Appellees. Over HMA's objections, Appellees were permitted to present an "expert" (with no knowledge or opinions as to Appellees' warranty submissions) to

---

[20] Doc. 559-11 (Pl. Ex. 2426); Doc-559-20 (Pl. Ex. 2491); Doc. 559-21 (Pl. Ex. 2492).

communicate to the jury the terms of HMA's Consent Order with NHTSA, including the $140 million civil penalty and other "serious" and "significant" requirements, in order to establish "the severity and rarity of these type of consent orders."[21] This irrelevant and highly prejudicial testimony, coupled with the highly prejudicial testimony of undisclosed witnesses, and hearsay in the form of recorded WPM customer calls, require a new trial as to all of HMA's claims against all Appellees.

In short, the legally erroneous jury instruction submitting the equitable defense of "unclean hands" to the jury, the verdict against the great weight of the evidence as to "unclean hands," and the multiple prejudicial errors in the admission of evidence require a new trial solely on damages against Khaytin and Revuelta as to HMA's fraud claim, and as to the remaining Appellees, and Khaytin and Revuelta on all other counts, an entirely new trial.

## ARGUMENT

I. **The District Court's Error in Instructing the Jury, Over HMA's Objections, on the "Unclean Hands" Defense Requires a New Trial on Damages as to Khaytin and Revuelta with Respect to HMA's Fraud Claim**

### A. HMA's Objections to the Unclean Hands Jury Instruction Were Both Timely and Sufficiently Stated

Pursuant to this Court's well-established precedent, an objection to a jury instruction is preserved for appellate review so long as: (1) the objection is made

---

[21] 1/9/2023 Tran. (Doc. 578) 110:15-18, 116:11-13.

prior to the jury beginning deliberations; and (2) the objection distinctly states the matter objected to and the grounds on which it is based. *See, e.g.*, *Petersen v. Smith,* 762 Fed. App'x 585, 592 (11th Cir. 2019) (a party may assign error to a jury instruction if "he objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds for the objection.") (citing *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1329 (11th Cir. 1999) (citing Fed. R. Civ. P. 51); *Johnson v. Conway*, 688 Fed. App'x. 700, 711 (11th Cir, 2017) ("For an objection to be timely under Rule 51, it must be made 'before the instructions and arguments are delivered."); *CM. Fisher v. Indiana Lumbermens Mutal Ins. Co.,* 456 F.2d 1396, 1401 (5th Cir. 1972) (Appellant "preserved the point by objecting to the instruction before the jury retired, stating distinctly the matter to which he objected and the grounds for his objection. . . That is all that Rule 51 requires.").

Thus, this Court has found objections to jury instructions made at the charge conference, or even *after,* to be timely under Rule 51. *See, e.g. Teel v. Lozada,* 99 F.4th 1273, 1282 (11th Cir. 2024) (objection to jury instruction at charge conference was timely under Rule 51); *Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533, 1539 (11th Cir. 1993) (appellant's objection was timely "based on its objection to the proposed charge during the charge conference."); *Warner v. Columbia/JFK Medical Center, LLP*, 305 Fed. App'x 610, 612 (11th Cir. 2008) (where appellant reflected the instruction in bold to signify his objection and raised an oral objection

at the charge conference, appellant's "objection at trial was timely under Rule 51."); *Gregg v US Indus., Inc.*, 887 F.2d 1462, 1467-1468 (11th Cir. 1989) (finding objection raised for the first time *after* the charge conference was timely: "Rule 51 of the Federal Rules of Civil Procedure permits a party to [challenge an instruction] if the party objects before the jury retires to consider its verdict.").

Indeed, the district court itself acknowledged this in the middle of trial when it stated—after being informed of the dispute as to the unclean hands instruction—"That is why we will have a charge conference."[22] Thereafter, the district court instructed the parties to file updated proposed jury instructions on January 16, 2023, which "clearly show me what the disputes are."[23] That is exactly what HMA did.[24]

As to the requirement of distinctly stating the matter objected to and the grounds for an objection, HMA specifically objected—both in writing on January 16th and orally at the January 17th charge conference—to the jury being instructed on *any* unclean hands defense on the grounds that: (1) unclean hands is an equitable defense inapplicable to claims seeking only money damages[25]; and (2) there was

---

[22] 1/13/2023 Tran. (Doc.582) 208:19-20.
[23] *Id.* 214:1-2
[24] Doc. 528 at 39-40.
[25] Doc. 528 at 39-40; 1/17/2023 Tran. (Doc. 596) 115:21-116:17.

insufficient evidence presented at trial to support the elements of an unclean hands defense.[26]

HMA's objections are *far more specific* than those previously recognized by this Court as preserving an alleged error in jury instructions for appellate review. *See, e.g. Seitman,* 837 F.2d at 1533, n. 5 (recognizing that, although "inartful[]," this statement at the charge conference preserved for appellate review the issue of whether the trial court erred in instructing the jury that it could award plaintiff the value of its business: "Mus[t]n't there be language, if it is going to be used at all, of extraordinary loss, because most breaches of contract which call for the standard measure of damage impose substantial damages. I don't think there is anything that takes this out of the ordinary run of the mill breach of contract that would warrant this more stringent standard to which Reynolds, and Reynolds alone is being exposed."); *Kroger Co. v. Roadrunner Transp. Inc.*, 634 F.2d 228, 229 (5th Cir. 1981) (statement "We would except, Your Honor, to the Court's failure to give defendant's request number 3, which deals with the obligation of the plaintiff once it discovers a condition at peril" was sufficiently clear to put court on notice of alleged error and preserve issue for appellate review); *Industrial Dev. Bd of Town of Section, Ala. v. Fuqua Indus. Inc.,* 523 F.2d 1226, 1238 (5th Cir. 1975) ("That the

---

[26] Doc. 528 at 40; 1/17/2023 Tran. (Doc. 596) 116:17-117:5.

arguments of Van Heusen's counsel may not have articulated this theory with polished lucidity does not relieve the district court of its obligation to apply the correct law to the facts before it."); *New Orleans & N.E.R. Co v. Hewett Oil Co.,*, 341 F.2d 406, 409-410 (5th Cir. 1965) (argument based on "piercing the corporate veil," rather than "joint adventure" issue argued on appeal, sufficiently complied with Rule 51 to preserve alleged error for appellate review); *Landsman Packing Co, Inc. v. Continental Can Co., Inc.*, 864 F.2d 721, 728 (11th Cir. 1989) ("Rule 51 must be read in conjunction with Rule 46, which essentially states that formal exceptions to court rulings or orders are unnecessary provided the party makes his objections known to the court.").

Here, citing to HMA's written objections by docket entry and page number at the charge conference, the district court clearly understood HMA's objections,[27] urged counsel for HMA to only spend "a minute or two"[28] orally arguing those objections, and then expressly stated "I understand your position."[29]

It was only in ruling on HMA's post-trial motions that the district court changed its mind, now characterizing the oral objections it had previously stated it understood as unclear and ambiguous. And, in ruling on HMA's post-trial motions,

---

[27] 1/17/2023 Tran. (Doc. 596) 114:23-115:5
[28] *Id.* 115:9-10.
[29] *Id.* 117:15.

the district court ignored altogether the January 16, 2023 written objections to the unclean hands instruction HMA filed at the court's direction. The issues raised on appeal are the *exact* issues which were the bases of HMA's written and oral objections to the unclean hands defense distinctly asserted before the jury began its deliberations. That is all that Rule 51 requires, and HMA respectfully submits that it neither waived its objections, nor invited error.

**B.** **HMA Also Preserved its Rule 50(b) Argument that the Unclean Hands Defense Should not go to the Jury.**

HMA's "fleshed out" objections to the unclean hands instruction, although not explicitly framed as a motion for relief under Rule 50(a), also satisfy the Eleventh Circuit's "liberal view" of what constitutes a motion for judgment as a matter of law and preserved these issues for purposes of HMA's "renewed" motion under Rule 50(b). *McGinnis v. Am. Home Mortg. Servicing, Inc.,* 817 F.3d 1241, 1261, 1263 (11th Cir. 2016); *Softball Country Club-Atlanta v. Decatur Fed. Sav. & Loan Ass'n,* 121 F.3d 649, 656 (11th Cir. 1997) (review of record of the charge conference is appropriate to determine whether movant lodged a request that "although not styled as a motion for JML, served the same purpose in that it conveyed a definitive, clear objection to the presentation of the [disputed] question to the jury."); *Registe v. Linkamerica Exp., Inc.*, 2015 WL 1288138, *2 (M.D. Fla. Mar. 19,2015), *aff'd* 668 F. App'x 882 (11th Cir. 2016) ("liberal" rule focuses "on whether all parties had

sufficient notice of the movant's concern, even if it was not expressly articulated in the Rule 50(a) motion."); *Splitt v. Deltona Corp.*, 662 F.2d 1142, 1144–45 (5th Cir. 1981) (motion for directed verdict was preserved during charge conference where counsel "argued strenuously against a jury instruction that would permit a finding of punitive damages"); *Quinn v. Southwest Wood Products, Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979) (defendant's objections to jury charge constituted unambiguous challenge to sufficiency of evidence and preserved JNOV motion on that issue).

As discussed, the district court was informed of HMA's definitive, clear objection to the submission of the unclean hands defense to the jury while the error could still be avoided. Therefore, in addition to preserving its objections to the erroneous jury instruction, HMA preserved its arguments under Rule 50(b), and the Order on Post-Trial Motions also should be reversed based on Appellees' failure to present a legally sufficient evidentiary basis for the jury to find for them on unclean hands, as discussed *infra*.

### C. HMA's Approval of *the Form* of the Unclean Hands Instruction Ordered by the District Court after it Overruled HMA's Objections Did not Waive or Invite Error.

HMA did not waive its objections, let alone invite error, by subsequently discussing the language of the unclean hands instruction "in light of [the district

court's] ruling"[30] that an unclean hands instruction would be given over HMA's objections, or by confirming on the record the next day that the parties were in "agreement" and there were no "other issues" as to the "Court's jury instructions" after a typographical and pagination error were corrected (1/18/2023 (Doc. 595) 9:22-10:18). *See Elzubier v. Sony Music Holdings, Inc.*, 564 F. App'x 545, 547 (11th Cir. 2014) (where court made clear that it would instruct jury on premises liability over appellant's objection, appellant did not waive its objection or invite error when it submitted a proposed jury charge on that issue); *Landsman*, 864 F.2d at 728 (appellant did not waive its objection to including reasonableness issue in jury interrogatory by suggesting "how the jury interrogatory should be worded if the trial judge insisted on including the reasonableness issue."); *U.S. v. Hayes*, 762 F.3d 1300, 1310 n.6 (11th Cir. 2014) ("A fallback position does not invite error.").

The only reasonable interpretation of these latter exchanges is that HMA was expressing its approval of *the form* of the instructions, as conforming to *the district court's rulings*, since the district court had already overruled HMA's objections. *Cf. Cherry v. Dometic Corp.*, 986 F.3d 1296, 1301 (11th Cir. 2021) (invited error "is triggered only by unambiguous statements or representations."). Having repeatedly made its objections to the giving of *any* unclean hands instruction unequivocally

---

[30] 1/17/2023 Tran. (Doc. 596) 179:3-4.

known to the district court and having been clearly overruled, it was unnecessary and futile for HMA to reiterate its global objections when queried as to whether there were other issues in the final text of the instruction or the verdict form. *Teel,* 99 F.4th at 1281 (rejecting argument that appellant waived objection to jury instruction by "fail[ing] to renew its objection to the final version of the jury instructions on the last day of trial."); *Jones v. Triple Z, Inc.*, 679 F. App'x 986, 987 (11th Cir. 2017) (objection to jury instruction is not waived by failing to raise it prior to jury deliberations "where a party has made its position clear to the court previously and further objection would be futile[.]"); *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1018 (11th Cir. 2004).

Finally, even assuming, *arguendo*, that HMA had waived its objections, the district court's submission of the unclean hands instruction to the jury was plain error, given the clear inapplicability of this defense, as described below. *See United States v. Fuentes*, 537 F. App'x 921, 926 (11th Cir. 2013).

### D. The Unclean Hands Defense Should not Have Been Submitted to the Jury Because it Is Inapplicable to Legal Claims Seeking Money Damages.

As this Court and the district courts within this Circuit have consistently held, unclean hands is an equitable defense, which applies only to equitable claims seeking equitable relief. *E.g.*, *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005) ("The doctrine of "unclean hands" is an equitable test that is used by courts in

deciding equitable fate."); *Cardinal Point, LLC v. Edgewood Partners Ins. Center, Inc.*, 2024 WL 1632740, * 16 (S.D. Fla. Apr. 16, 2024) ("defense of unclean hands does not apply '[w]here, as here, a plaintiff seeks to recover only damages[.]'"); *Newman v. Am. Home Ass. Co.,* 2024 WL 1209801, *8 (S. D. Fla. Mar. 20, 2024) ("it is well established that unclean hands 'is an equitable doctrine which applies only to claims for equitable relief.'"); *Island Roofing & Restoration LLC v. Empire Indem. Ins. Co.*, 2022 WL 4305922, at *6, n.3 (M.D. Fla. Sept. 19, 2022); *Republic Bank of Chicago v. Gehrisch Ins. & Fin. Servs., Inc.*, 2022 WL 3646067, at *8 (M.D. Fla. July 21, 2022); *FTF Lending, LLC v. Sw. Devs., Inc.*, 2020 WL 13349085, at *2 (M.D. Fla. Apr. 1, 2020); *Incarcerated Ent., LLC v. Cox*, 2019 WL 4738144, at *5 (S.D. Fla. Sept. 27, 2019); *Wendl v. Int'l Real Estate News, LLC*, 2019 WL 4254626, * 4 (S.D. Fla. July 31, 2019); *SMK Assoc. v. Lorali*, 2015 WL 11197776, at *3 n.2; *Nature's Prod., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1317 (S.D. Fla. 2013); *Regions Bank*, 2010 WL 5148467, at *6; *Royal Palm Properties, LLC v. Premier Est. Properties, Inc.*, 2010 WL 3941745, *2 (S.D. Fla. Oct. 6, 2010); *De Gracas v. Running Billboard Corp.*, 2006 WL 8432507, *4 (S.D. Fla. Apr. 12, 2006).

Unclean hands cannot bar fraud claims seeking money damages, which are legal in nature. *Scott v. Paychex Ins. Agency, Inc.*, 2023 WL 5036099, *11 (S.D. Fla. Aug. 8, 2023) (granting summary judgment against defendant on unclean hands defense, which was inapplicable to claims for fraud and negligence, that "do not

arise in equity"); *Adana Investing, Inc. v. Wells Fargo Bank, N.A.*, 2017 WL 3668553, *16 (S.D. Fla. Apr. 10, 2017) (granting motion for summary judgment on unclean hands defense in fraudulent misrepresentation action).

This extensive precedent from the past two decades steadfastly declining to apply unclean hands to legal claims for money damages readily dispels the district court's suggestion, based on a legal treatise from 2008, that there is a "growing shift" in the law that justified its submission of the unclean hands defense to the jury. (Doc. 615 at 22). The few cases the district court cited in support of its submission of the unclean hands defense to the jury are vastly outweighed by the numerous authorities cited above and easily distinguished. (Doc. 615 at 21-23). In *May v. Nygard Holdings Ltd.*, 2007 WL 2120269, *3 (M.D. Fla. July 20, 2007), the court held that unclean hands may bar a fraudulent inducement action against a "co-perpetrator" "based on a plaintiff's own involvement in fraud." Here, Appellees did not allege that HMA was a "co-perpetrator" of their fraud—only that it "botched" the recall. Doc. 530 at 32.

In *Gastaldi v. Sunvest Resort Communities, LC*, 2010 WL 457243, *8 n.7 (S.D. Fla. Feb. 3, 2010), Judge Altonaga expressly *declined* to rule on the applicability of unclean hands to FDUTPA claims because the elements of the defense were not met, regardless. Last year, Judge Altonaga ruled that unclean

hands applies only to claims for equitable relief, and held that the defense failed as a matter of law as to fraud claims. *Scott*, 2023 WL 5036099, *11.

Based on the lack of Eleventh Circuit precedent applying or rejecting an unclean hands defense as to *RICO* claims, the court in *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 693–94 (S.D. Fla. 2006) denied class certification because the potential availability of the defense as to some class members defeated typicality. The court did not rule that unclean hands actually applies to RICO claims. Moreover, it is the district court's decision to allow unclean hands as a defense to HMA's *fraud* claims, which is at issue here.

Finally, in *Sciaretta v. Lincoln National Life Insurance Co.*, No. 11-cv-80427-DMM (S.D. Fla. Mar. 2, 2012) (Doc. 147), the plaintiff apparently never objected to the submission of defendant's unclean hands defense to the jury, and thus the court undertook no legal analysis as to the availability of that defense. Further, the jury found no fraud and therefore never reached the unclean hands defense. *Id.* at Doc. 150.

The district court properly rejected Appellees' argument that HMA was effectively seeking disgorgement of Appellees' profits, an equitable remedy. (Doc. 615 at 24). Although HMA never formally amended its complaint to withdraw its earlier prayers for equitable relief, HMA made multiple clear representations prior to and during trial that it had abandoned its request for disgorgement and instead

sought only compensatory damages: specifically, the average amount HMA paid WPM per engine replacement during the relevant period, multiplied by the estimated number of fraudulent warranty claims (determined by comparing WPM's engine replacement rates with other dealerships), rather than the measure of Appellees' profits.[31] *Id.* at 9; Doc. 385 at 6-7; Doc. 404 at 5; Doc. 528 at 40; 1/9/23 Tran. (Doc. 578) 41:19-42:13; *see also AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1374 (11th Cir. 2021) ("a money judgment, even if based on restitution, is generally a legal remedy."); *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 698 (Fla. 3d DCA 2018) ("The equitable remedy of disgorgement is measured by the defendant's ill-gotten profits or gains rather than the plaintiff's losses.").

However, in denying HMA's Rule 59 Motion, the district court erroneously held that HMA's approximation of damages (based on the average cost per engine over the relevant period) "raised the specter of equitable relief." (Doc. 615 at 25). Neither the district court nor Appellees offered any authority to support this theory— there is none. HMA's use of a reasonably certain damages estimate did not convert its legal claims for money damages to claims for equitable relief. The law is well

---

[31] Appellees testified that WPM's profits in connection with each engine replacement were not the full amount HMA paid WPM, due to labor and other expenses (*E.g.*, 1/5/23 Tran. (Doc. 576) 164:13-22), underscoring the practical distinction between disgorgement and the compensatory damages sought by HMA.

settled that damages need only be established with reasonable certainty where precise computation is impracticable. *See, e.g. G.M. Brod & Co., v. U.S. Home Corp.*, 759 F.2d 1526, 1540 (11th Cir. 1985); *United States v. Killough,* 848 F.2d 1523, 1531 (11th Cir. 1988); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.,* 46 F.3d 258, 261 n. 2 (3d Cir. 1995). This uncontroversial principle is irrelevant to the nature of the relief sought and did not allow for application of the unclean hands defense to bar HMA's fraud claim for compensatory damages.

### E. The Error in Submitting the Unclean Hands Defense to the Jury was Unquestionably Prejudicial

We need not wonder whether the "unclean hands" defense affected the outcome of the trial. It did. The jury found Khaytin and Revuelta "committed fraud against Hyundai," but awarded no damages to HMA based on the defense. (Doc. 532 at 2). Even in cases where the prejudice was far less obvious, this Court has noted: "the possibility that the jury may have employed the wrong criterion of liability to exonerate the defendants requires a new trial." *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 979 F.2d 823, 827 (11th Cir. 1992); *Seitman,* 837 F.2d at 1532-1533 ("[w]here, as here, a trial court has submitted to the jury an issue not proper for its consideration we ordinarily order a new trial."). A new trial on damages with respect to HMA's fraud claim is similarly required as to Khaytin and Revuelta based on the erroneous submission of the unclean hands defense to the jury.

**II.** **A New Trial on Damages as to Khaytin and Revuelta with Respect to HMA's Fraud Claim is Also Necessary Because the Verdict on "Unclean Hands" is Against the Great Weight of the Evidence**

Putting aside the legal inapplicability of the unclean hands defense, there was also no evidence presented at trial to support either required element of the unclean hands defense: (1) a "direct relationship" between Appellees' warranty fraud and HMA's alleged "unconscionable or reprehensible conduct[:]" namely, "a botched recall of the Theta II engine that included a flawed test;" and (2) that Khaytin and Revuelta were "personally injured by such conduct." Doc. 530 at 33.

**A.** **No Evidence Established the Required "Direct Relationship" between Appellees' Intentional Fraud and any "Unconscionable or Reprehensible" Conduct by HMA**

There was *no* evidence presented at trial establishing that Khaytin's and Revuelta's intentional fraud in submitting false warranty claims was "directly related" to unconscionable or reprehensible conduct by HMA in connection with the so-called "botched" recall. Regardless of whether "botched" is taken to mean that HMA should have instituted a recall earlier or an initially broader recall or used a better diagnostic test for the recall condition, the required evidence of a "direct relationship" between any recall deficiencies and Khaytin's and Revuelta's intentional fraud is non-existent. Khaytin and Revuelta simply denied that they participated in blowing engines or submitting false paperwork; they did not try to excuse their commission of fraud based on any recall deficiencies. *See, e.g.* 1/5/2023

Tran. (Doc. 576) 160:15-18 (Khaytin); 1/9/2023 Tran. (Doc. 578) 154:17-155:3 (Revuelta). The only possible relationship between HMA's conduct as to the "botched" recall and Appellees' fraud is that both occurred in the general context of the Theta II recalls. That is clearly insufficient under this Court's precedent.

In *Calloway v. Partners National Health Plans*, 986 F.2d 446 (11th Cir. 1993), this Court held that the plaintiff's misrepresentation to her employer that she had a college degree was "irrelevant" and not "directly related" to her wage discrimination claim, since neither plaintiff's predecessor nor successor had a college degree. *Id.* at 450-51. Thus—without reaching the issue of whether unclean hands applies in Title VII actions—this Court determined, as a matter of law, that defendant was precluded from asserting an unclean hands defense, as the requirements of the defense were not met. *Id.* Here, HMA's alleged failure to institute a recall early enough or broadly enough, or its utilization of a purportedly flawed diagnostic test, is similarly irrelevant to Khaytin's and Revuelta's deliberate submission of false warranty claims.

Numerous district court decisions have relied on *Calloway* to reject an unclean hands defense in the absence of the required direct relationship. *E.g.*, *Gastaldi*, 2010 WL 457243, * 9 ("it is not enough that the unclean hands conduct is the same kind of conduct as the matter in litigation . . . .[or] involves the same overall transaction."); *Bowe v. Public Storage*, 2015 WL 11233137, *3 (S.D. Fla. June 26,

2015) (rejecting unclean hands defense based on plaintiff's alleged misrepresentation relating to value of insured property, which was not "directly related" to plaintiff's claim involving the same policy); *see also PNC Bank v. Smith*, 225 So.3d 294, 295 (Fla. 5th DCA 2017) (reversing final judgment entered against lender based on unclean hands defense because lender's misconduct concerning second lien was not sufficiently related to the foreclosure of the first mortgage, even though defendants stopped paying the first mortgage based on lender's misconduct in connection with the second lien).

In finding that the trial evidence supported unclean hands, the district court accepted Appellees' argument that somehow a practice called "prebooking" established the necessary "direct relationship." (Doc. 615 at 27). According to Appellees, "prebooking" occurs when an engine repair ticket is closed out early, and merely results in an employee getting paid early, but does not result in any economic injury to HMA. Doc 598 at 13 ("the only effect was earlier **internal** credit for completing the job."). The district court stated:

> The Court agrees with Defendants' argument that "HMA repeatedly tried to link prebooking to warranty fraud in an effort to confuse the jury. Despite prebooking proving nothing about warranty fraud, it provides direct support for applying the unclean hands defense to Khaytin and Revuelta: these Defendants never would have been written up or accused if HMA had not botched the Theta II recalls with (among other things) faulty tests, tardy replacement engines, and constant misinformation."

Doc. 615 at 27. HMA cannot make any sense of this statement.

First, in finding that Khaytin and Revuelta committed *intentional fraud against HMA*,[32] the jury necessarily rejected Appellees' argument that Khaytin and Revuelta merely engaged in "prebooking," which, again, according to Appellees, only violated WPM's internal accounting rules and did not impact HMA.

Second, according to Appellees, "the reason that Revuelta prebooked engine repair tickets **was that HMA was severely backlogged in shipping replacement engines, and so cars would sit around for months waiting for an engine**." Doc. 598 at 13 (emphasis added). In other words, Khaytin and Revuelta purportedly did not want to wait for engines to arrive to earn their extra money from the pending replacements.

But Appellees were required to establish that HMA committed "*an unconscionable act*" or "*reprehensible conduct*" directly related to Appellees' *fraud*. Delay in delivering new engines to WPM (even if it leads employees who do not want to wait to make extra money to engage in "prebooking") cannot possibly constitute such "unconscionable" and "reprehensible" conduct as to bar a defrauded

---

[32] Doc. 530 at 13 (as to the fraud claim, the jury was instructed to determine, *inter alia,* "whether each Individual Defendant intended that Hyundai would rely on the false statement…whether Hyundai relied upon an Individual Defendant's false statement; and, if so…whether the Individual Defendant's false statement was a legal cause of loss/damage to Hyundai.").

party (HMA) from recovering its damages.[33] Were it otherwise, delay in the context of any commercial relationship would give rise to an "unclean hands" defense.

Because there was no evidence that Khaytin's and Revuelta's fraud was "directly related" to "unconscionable" or "reprehensible" conduct by HMA, the jury's finding of unclean hands is against the great weight of the evidence.

### B.    There was no Evidence that Khaytin or Revuelta were *Personally Injured* by the so-called "Botched Recall"

The jury's verdict is similarly against the great weight of the evidence as to the second requirement for an unclean hands defense—that "Defendants were personally injured" by the purportedly botched recall.  As summarized above, the evidence presented at trial is directly to the contrary, establishing that Khaytin and Revuelta personally *benefited* from the recall.  Khaytin wrote at the time: "Many engines failing.  Great news!! **$$$$.**"[34] Revuelta similarly "loved" to get additional "BIG MONEY MAKER" recall work.[35]

---

[33] *Miljkovic v. Shafriz and Dinkin*, P.A., 791 F.3d 1291, 1308 (11th Cir. 2015); *Zarate v. U.S. Attorney Gen.*, 26 F.4th 1196, 1208 (11th Cir. 2022) (defining "reprehensible" as "conduct that is 'inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.'"); *Onita-Olojo v. Sellers*, 2014 WL 1319304, *6 (S.D. Fla. Mar. 31, 2014) ("A court invokes this Unclean Hands Doctrine where a party's egregious conduct "shock[s] the moral sensibilities of the judge.").
[34] Doc. 559-11 (Pl. Trial Ex. 2426).
[35] Doc. 559-20 (Pl. Trial Ex. 2491); Doc. 559-21 (Pl, Trial Ex. 2492).

The district court ignored this extensive evidence, instead adopting Appellees'
argument that:

> Khaytin and Revuelta were personally injured by HMA's conduct in
> that they were reprimanded and written up [for prebooking], lost sales
> income and profits, had to allow unsafe cars to return to the roads, and
> had to deal with upset customers,

Doc. 615 at 27. Again, this statement makes no sense.

First, as discussed, the entire prebooking argument is foreclosed by the jury's
finding that Khaytin and Revuelta committed fraud *against HMA*. Moreover, the
suggestion that Khaytin and Revuelta were personally injured *by HMA* because they
were disciplined *by their employer for purportedly violating internal corporate
policy* [36] is absurd.

Nor did Khaytin and Revuelta testify that they "had to allow unsafe cars to
return to the roads." That simply is not accurate (nor would it have harmed *them*).
Revuelta admitted the opposite (1/9/23 Tran. (Doc.578) 179:13-17), and Khaytin
had no involvement with servicing vehicles.

Nor can frustrated WPM customers constitute the requisite injury *personally*
suffered by Khaytin and Revuelta. *Bluegreen Vacations Unlimited, Inc. v.
Timeshare Termination Team, LLC*, 2021 WL 2476488, *11 (S.D. Fla. June 17,
2021) (striking unclean hands defense asserted against agents of timeshare owners

---

[36] Docs. 559-4 (Pl. Ex. 2406); 559-5 (Pl. Ex. 2408).

where alleged wrongful conduct targeted and injured owners, rather than defendants personally); *Wyndham Vacation Ownership, Inc. v. Reed Hein & Associates, LLC, et al.*, 2019 WL 13138272, *3 (M.D. Fla. Dec. 11, 2019) (same); *BAC Financial Services, Inc. v. Multinational Life Ins. Co.*, 2014 WL 11531793, * 9 (S.D. Fla. Oct. 10, 2014) (rejecting defense where defendants were not personally injured by wrongdoing); *Lindvall v. Richmond*, 2015 WL 12791483, *6 (S.D. Fla. June 24, 2015) (same).

No testimony or exhibit suggested that either Khaytin or Revuelta personally suffered any loss due to the "botched" nature of the recall.  Thus, the jury's unclean hands finding is against the great weight of the evidence.

## III. The District Court's Multiple Errors in Admission of Evidence Require a New Trial as to All Appellees

### A. The Erroneous Admission of the NHTSA Consent Order and Related Swanson Testimony Affected HMA's Substantial Rights.

The admission of the Consent Order and related expert testimony of Swanson over HMA's objections[37] was an abuse of discretion that affected HMA's substantial rights.  *See Moore v. Geico*, 758 Fed. App'x. 726, 733 (11th Cir. 2018).  This evidence lacked any probative value and served only to prejudice the jury against HMA.  By emphasizing the severity of the penalties imposed by NHTSA, Appellees

---

[37] HMA moved *in limine* to exclude this evidence (Docs. 333, 353), and reserved its objections at trial.  1/9/2023 Tr. (Doc. 587) 109:18-19

encouraged the jury to punish HMA for perceived shortcomings in the administration of its recalls, notwithstanding the lack of any legitimate relationship between this highly prejudicial evidence and Appellees' commission of fraud.

HMA voluntarily entered into the Consent Order to "administratively resolve" NHTSA's allegations, which concerned purported deficiencies as to the timing and scope of Hyundai's initial recalls and its compliance with reporting requirements. Doc. 353-1, Consent Order ¶¶ 2, 9. HMA did not admit to any wrongdoing, and the Consent Order did not operate as an adjudication of its liability as to NHTSA's allegations. *Id.*; *see also Kramas v. Security Gas & Oil Inc.*, 672 F.2d 766, 772 (9th Cir. 1982) (trial court did not err in excluding evidence concerning SEC consent decree which was of limited probative value and "involved no finding of culpability and no judgment of wrongdoing").

Federal Rule of Evidence 408 has been interpreted to bar admission of civil consent decrees to prove the government's allegations. *United States v. Austin,* 54 F.3d 394, 400 (7th Cir.1995); *Loughlin v. Amerisave Mortg. Corp.*, 2019 WL 8375920, *17 (N.D. Ga. Nov. 12, 2019); *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 9358563, *3 (N.D. Ga. Apr. 23, 2008). Permissible purposes for admitting consent decrees include demonstrating the subject's notice or knowledge of facts recited therein, when relevant to the claims being tried.

*Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024 (9th Cir. 2015). No such permissible, probative purposes existed here.

In opposing HMA's motions to exclude the Swanson testimony and Consent Order (Docs. 333 and 353), Appellees argued that this evidence supported their unclean hands defense. Putting aside the defense's legal inapplicability, there is no factual or causal connection between the requirements of the Consent Order (severe or not) and Appellees' intentional submission of false warranty claims, let alone the conduct Appellees claimed constituted "unclean hands." Specifically, neither the Consent Order, nor Swanson's testimony addressed any purported flaws in HMA's diagnostic tests or delays in its distribution of replacement engines, even if such conduct could serve as the basis for that defense. *See* Doc. 353-1; Doc. 598 at 13; Tr. 1/9/2023 (Doc. 578) 85:1-121:15.

Moreover, at trial Appellees expressly acknowledged that they were offering Swanson's testimony for the purposes of "establishing the severity and rarity" of the Consent Order and the "egregiousness" of the recall, purposes which were purely prejudicial in nature. 1/9/2023 Tran. (Doc. 578) 116:11-14. Swanson testified, *inter alia,* that the $140 million penalty was one of the largest NHTSA had ever imposed, that other aspects of the Consent Order had rarely or never been imposed, and that HMA presented an "extreme case and that is why NHTSA put all of the conditions in place, and also the level of fine" that was imposed. *Id.* 108:9-111:17, 122:7-10.

The district court vaguely justified its decision to admit evidence concerning the Consent Order by stating that it "provided the jury with the necessary context and background for this lawsuit." (Doc. 615 at 30; Doc. 405 at 6). But neither the district court nor Appellees ever managed to articulate what relevant context and background this evidence provided that could not have been—and indeed was—comprehensively covered by the testimony of percipient witnesses concerning the relevant scope and history of the recalls and the warranty claims submission process. 1/4/23 Tran. (Doc. 575) 126:18-144:9 (Jared Blackburn, senior manager of campaigns and analysis for HMA, testifying concerning the recalls and related warranty claims processes). The gravity of NHTSA's allegations and penalties had no bearing upon whether or why Appellees' warranty submissions to HMA were false, or how well HMA's diagnostic tests for the recall condition worked. Swanson had no knowledge whatsoever of Appellees' warranty submissions and did not even mention HMA's diagnostic tests.

Thus, the district court abused its discretion in admitting this evidence because any purported probative value of the NHTSA-related evidence (minimal, at best) was dramatically outweighed by its prejudicial effect and the danger of jury confusion. *Ross v. Am. Red Cross*, 567 F. App'x 296, 308 (6th Cir. 2014) ("even if evidence of the Consent Decree would have provided relevant background information, its probative value was substantially outweighed by the risk of

prejudice."); *Gribben v. United Parcel Service, Inc.*, 528 F.3d 1166, 1172 (9th Cir. 2008) (affirming exclusion of EEOC consent decree because it was irrelevant, unduly prejudicial, confusing and misleading); *Price v. Trans Union, L.L.C.*, 839 F. Supp. 2d 785, 812 (E.D. Pa. 2012) (probative value of consent order was substantially outweighed by the likelihood of jury confusion); *Wozniak v. Coatesville Area Sch. Dist.*, 2006 WL 5116701, *1 n.5 (E.D. Pa. June 19, 2006) (excluding consent decree as irrelevant and unduly prejudicial); *cf. Moore*, 758 Fed. App'x at 733 (affirming grant of new trial based on prejudicial admission of non-defendant insurer's settlement with the plaintiffs).

The district court also failed to explain how this evidence was "inextricably intertwined" with relevant evidence, such that it could not be excluded. (Doc. 615 at 30). In reality, this evidence was in a discrete category of its own and far afield of the material issues in this case: *i.e.*, the veracity of Appellees' warranty submissions to HMA.

The erroneous admission of this highly prejudicial evidence affected HMA's substantial rights, requiring a new trial. *See Moore*, 758 Fed. App'x at 733. A party's substantial rights are affected where the error likely had a substantial influence on the jury's verdict. *Bratt*, 782 F. App'x at 966. The Court considers: "the number of errors, the closeness of the factual disputes, the prejudicial effect of the evidence, the instructions given, and whether counsel intentionally elicited the evidence and

focused on it during the trial." *Moore*, 758 Fed. App'x at 733. These factors weigh in HMA's favor. The prejudicial admission of the Consent Order and Swanson testimony was exacerbated by the erroneous submission of the unclean hands defense to the jury and the erroneous admission of the testimony of undisclosed witnesses and hearsay recordings of customer calls, as described *supra* and *infra*.

The Consent Order was a deliberate focus of Appellees' argument at trial. 1/9/2023 Tran. (Doc 578) 116:12-16 (trial court stating that defense counsel had already established the "severity and rarity of these types of consent orders" and the "egregiousness of the recall."). It was the sole subject elicited during Swanson's 38 pages-worth of trial testimony. NHTSA's investigation and $140 million civil penalty were highlighted in Appellees' opening argument, after Appellees explained that NHTSA's function is to "save lives, prevent injuries, and reduce economic costs due to road traffic crashes[,]" thus injecting the unfairly prejudicial suggestion that the Consent Order was entered into because HMA endangered the public. 1/4/23 Tran. (Doc. 575) at 80:22-81:13.

Accordingly, HMA's substantial rights were affected by the erroneous admission of this highly prejudicial evidence, and it is entitled to a new trial.

**B.** **The District Court Abused its Discretion in Allowing Undisclosed Witnesses to Testify.**

The district court further abused its discretion by allowing Appellees to present the testimony of three WPM customers (the "Customers") that Appellees failed to disclose until after the close of HMA's case (although, unbeknownst to HMA, Appellees had subpoenaed these witnesses to testify prior to the start of trial).[38] The Customers owned Hyundai vehicles that were identified by HMA's expert, Jim Smith, as being the subject of fraudulent warranty submissions (false oil pan pictures) by Appellees to HMA. Each Customer testified that their vehicle died suddenly while driving. 1/13/23 Tran. (Doc. 582) 29:3-30:2, 37:3-38:11, 44:4-8.

In evaluating whether the district court abused its discretion in permitting the Customers to testify, the Court should consider Appellees' explanation (if any) for the failure to disclose the witness, the importance of the testimony, and the resulting prejudice to HMA. *Marjam*, 812 Fed. App'x at 813; *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 811 (11th Cir. 2017).

Appellees offered no valid explanation for failing to timely disclose these witnesses. Rather, Appellees disingenuously argued that the Customers were "impeachment" witnesses, and therefore exempt from disclosure requirements. According to Appellees, the Customers' testimony "impeached" the testimony given

---

[38] 1/10/2023 Tran. (Doc. 579) 21:16-19.

by Jim Smith (the only engineer to testify at trial) and Jared Blackburn that the recall condition was progressive in nature. (Doc. 503). But the testimony regarding the progressive nature of the recall condition was fully consistent with HMA's expert reports and briefing for the prior eighteen months, belying any suggestion that Appellees were forced to confront a new or unexpected issue at trial such that their failures of disclosure may be excused. *See* Docs. 131-1 at 3-4; 316-1 at 2-3, 81; 380 at 8. Appellees simply chose not to present their own engineer or other expert to dispute evidence of the progressive nature of the recall condition, despite full awareness that this evidence would be presented at trial, and instead ambushed HMA with unhelpful lay testimony.

The impeachment exception to Rule 26(a)(1), is "a narrow exception that should be limited to circumstances where the evidence offered by the witness plays no role other than impeachment[;] *i.e.*, is "offered to discredit a witness ... to reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in her or her testimony." *Ewing v. Carnival Corp.*, 2022 WL 1719315, *12 (S.D. Fla. May 27, 2022). The Customers were not offered for the sole, or even primary, purpose of discrediting HMA's witnesses, but rather, to support Appellees' affirmative position that the warranty submissions for those vehicles were not fraudulent. The obvious "substantive impact and use" of the Customers' testimony rendered them ordinary defense witnesses, whose timely

disclosure was required.  *See Id.* (video footage of guard jimmying a lock went "well beyond its purported [ ] purpose" to impeach expert testimony that the lock was tamper resistant); *F.T.C. v. Nat'l Urological Grp., Inc.,* 645 F. Supp. 2d 1167, 1180–81 (N.D. Ga. 2008), *aff'd*, 356 F. App'x 358 (11th Cir. 2009) (excluding supposed "impeachment" witness where the testimony "was substantive evidence supporting the FTC's defense…").

As HMA explained in seeking to exclude the Customers, the fact that their vehicles failed did not establish that the failures *were due to the recall condition,* particularly given the extremely high mileage on at least two of the vehicles. 1/13/2023 Tran. (Doc. 582) 32:9-17 (152,000 miles), 40:9-20 (141,981 miles). Thus, it was a non-sequitur for Appellees to contend that the Customers' testimony concerning the sudden failure of their vehicles "impeached" HMA's testimony that the recall condition was progressive in nature.  For this same reason, the Customers' testimony was of low importance.  Their lay testimony that their vehicles died had no tendency to prove that the engines on their vehicles suffered from the recall condition, or that WPM's corresponding warranty claims containing duplicate oil pan pictures were true and accurate.

Finally, HMA was prejudiced by the Customers' testimony, which improperly injected irrelevant, highly prejudicial, issues of customer safety into the trial.  Each Customer testified as to a harrowing incident where their vehicle stopped in traffic.

*See* 1/13/23 Tran. (Doc. 582) 29:3-30:2, 37:3-38:11, 44:4-8.  Further, had HMA been made aware, through timely disclosures, that these witnesses and their vehicles may be highlighted at trial, HMA would have deposed the witnesses and focused discovery efforts on their particular vehicles.

### C.    The District Court Abused its Discretion in Admitting Hearsay Recordings of Customer Calls to WPM.

The district court's error in allowing the Customers to testify was compounded by its admission of recordings of three customer calls to WPM, which were inadmissible hearsay.  Appellees stipulated that they were introducing those calls to prove that the declarants' cars were towed to WPM after their engines failed while driving, *i.e.*, for the truth of the matters asserted therein.  1/12/23 Tran. (Doc. 581) 8:21-9:24.  These callers were not identified on Appellees' initial disclosures or witness lists.  Thus, they were not deposed, and they did not testify at trial.

Appellees failed to establish that the excited utterance or present sense impression exceptions to the rule against hearsay applied to admit these recordings.[39] Specifically, Appellees failed to produce any evidence concerning the timing and

---

[39] Rule 803(1), (2) defines these exceptions as follows:
(1) *Present Sense Impression*.  A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.
(2) *Excited Utterance*.  A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.

circumstances of these customer calls that demonstrated that the statements were made during or immediately after the events they described, or while the declarants were still under the stress of those events. *Carrizosa v. Chiquita Brands Int'l, Inc.,* 47 F.4th 1278, 1314 (11th Cir. 2022); *United States v. Bates*, 960 F.3d 1278, 1291 (11th Cir. 2020); *United States v. Carlisle*, 173 F. App'x 796, 800–01 (11th Cir. 2006); *United States v. Cruz*, 765 F.2d 1020, 1024–25 (11th Cir. 1985); *United States v. Cain,* 587 F.2d 678, 681 (5th Cir. 1979).

Rather, the call contents suggest that significant time had elapsed between the time of their vehicular breakdown and the customers' calls to WPM. Docs. 540-41 (Def. Ex. 570) (enough time elapsed for a towing company to arrive, since the caller noted car was "being towed"); 540-42 (Def. Ex. 571) (enough time elapsed for the caller to travel to an "auto parts store;" where caller had "already spoke[n] to two mechanics"); 540-43 (Def. Ex. 572) (enough time elapsed that the caller had "found out that car has a recall" and was "told to have the car brought" to the dealership). Further, the callers' voices were calm and controlled, demonstrating that they were no longer under the stress of their breakdowns. Docs. 585; 586.

Like the Customers' testimony, nothing in these recordings is probative as to whether the callers' vehicles actually suffered from the recall condition. Both the Customers' testimony and the recordings figured prominently in Appellees' closing. 1/18/23 Tran. (Doc. 595) at 53:13-19. Thus, this hearsay evidence was highly

prejudicial to HMA, and further warrants a new trial. *See Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1162-65 (11th Cir. 2004).

## CONCLUSION

This Court should reverse and remand for a new trial solely on damages against Khaytin and Revuelta as to HMA's fraud claim, and as to the remaining Appellees, and Khaytin and Revuelta on all other counts, for an entirely new trial.

## CERTIFICATE OF COMPLIANCE

The foregoing Appellant's Opening Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because, excluding the part of the brief exempted by Fed. R. App. P. 32(f), it contains 12,993 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/     Mitchell E. Widom*
Mitchell E. Widom

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2024, a true and correct copy of the foregoing was served via electronic filing pursuant to the Eleventh Circuit ECF Procedures, which will send a notice of electronic filing to all counsel of record.

/s/    *Mitchell E. Widom*
       Mitchell E. Widom